# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KELLI MIKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 09-CV-363 JHP FHM** |
| | ) | **BASE FILE** |
| PROFESSIONAL CLINICAL | ) | |
| LABORATORY, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This is a diversity action wherein Kelli Mike ("Plaintiff") claims injury as a result of a workplace drug test conducted by her former employer, Leisure Village Health Care Center ("Leisure Village"). Plaintiff's test result came back positive for illicit drugs. Defendant Professional Clinical Laboratory, Inc. ("ProLab") was the laboratory with whom Leisure Village previously contracted to perform medical testing for its long-term care residents. Plaintiff alleges ProLab was a party to the workplace drug test and violated the Oklahoma Standards for Workplace Drug and Alcohol Testing Act, ("Testing Act"), 40 O.S. § 551, *et seq*. Plaintiff further alleges gross negligence under the Oklahoma common law.[1] Now before the Court is ProLab's Motion for Summary Judgment ( Document # 55) on Plaintiff's claims.

---

[1] The instant action is one of three that have been filed as a result of damages allegedly arising from this workplace drug test. Plaintiff filed her original action in the District Court in and for Tulsa County, Oklahoma. Defendants in that action, including Leisure Village, offered to allow judgment to be entered against them in the amount of $100,000.00. Plaintiff accepted. Subsequently, Leisure Village brought a separate tort and breach of contract action against ProLab to recover, *inter alia*, the amount of the judgment paid to Plaintiff. *See Leisure Village Operating, LLC d/b/a Leisure Village Health Care Center vs. Professional Clinical Laboratory, Inc.*, Case No. 4:09-cv-654-GKF-FHM (N.D.Okla. 2009).

**I.**

The following facts are undisputed by the parties.[2]  Plaintiff was employed as a Licensed Practical Nurse (LPN) by Leisure Village, at the time of the workplace drug test, in June of 2007.  Leisure Village is a long-term care, skilled nursing facility located in Tulsa, Oklahoma.  ProLab was the laboratory with whom Leisure Village contracted for the provision of clinical laboratory services to Leisure Village patients.   ProLab was licensed, under federal authority, to provide clinical laboratory testing services.

In June of 2007, Leisure Village staff noticed that certain controlled medications prescribed for Leisure Village patients ("Lortab") and stored on-site at Leisure Village, were unaccounted for.   Angela Haas, the administrative director of Leisure Village, directed Jennifer Mayfield, the director of nursing, to conduct workplace drug tests on those Certified Medical Assistants (CMA) employed by Leisure Village who were working during the period the medication became unaccounted for.   Subsequently, Angela Haas directed Jennifer Mayfield to conduct workplace drug tests on all LPNs employed by Leisure Village who were working during the period the medication became unaccounted for.

The contract between Leisure Village and ProLab does not provide for the provision of employee drug testing services, and ProLab was not licensed to conduct forensic drug tests.  Nevertheless, Jennifer Mayfield contacted ProLab and informed an

---

[2] In its Motion for Summary Judgment, Pro-Lab offered a total of thirty-six (36) facts as both material and undisputed.  *See* Dkt. # 55, 2-8.  In response, Plaintiff "does not dispute Pro-Lab's material facts listed in Paragraphs 1-10, 12-25 and 27-35."  *See* Dkt. # 57 at 6. Plaintiff "disputes at least some of the facts" proffered by Pro-Lab as Facts No. 11, 26, 36.  *Id.*  However, Plaintiff failed to support her assertion by either citing to particular parts of materials in the record or showing that the materials cited do not establish the absence or presence of a genuine dispute.  Fed. R. Civ. Pro. 56(c)(A)(B).

unnamed person that Leisure Village desired ProLab to pick up and test urine samples collected by Leisure Village from certain employees. Jennifer Mayfield did not initially inform the unidentified person that Leisure Village was screening the samples for Lortab. Jennifer Mayfield never read the Leisure Village contract with ProLab before calling ProLab.

On June 28, 2007, Plaintiff reported to Leisure Village to collect her paycheck. Plaintiff was informed that she would have to submit a urine sample before she could pick up her paycheck, whereupon Jennifer Mayfield proceeded to collect a urine sample from Plaintiff. Jennifer Mayfield never read Leisure Village's internal policies regarding drug testing employees before collecting the urine specimens. Jennifer Mayfield had previously been involved in several employee drug screens while working for the Veteran's Hospital in Muskogee and was familiar with forensic drug test requirements. During collection of Plaintiff's sample, Jennifer Mayfield did not: observe Plaintiff provide the sample, prepare a chain of custody form, secure the container in which Plaintiff's sample was provided, or arrange for the sample to be picked up that same day. It is undisputed that Leisure Village's collection of Plaintiff's urine sample did not comply with the Testing Act.

A ProLab employee, Teresa Balance, picked up the collected, unsecured samples and transported them to ProLab's facility in Oklahoma City. ProLab did not test the samples. Rather, the test was conducted by Quest Diagnostics Inc. ("Quest"), a laboratory testing facility with whom ProLab maintained a separate contract. ProLab contacted a Quest courier who retrieved the samples from ProLab. It is undisputed that

the urine samples, as collected by Leisure Village, were not subjected to forensic testing as required by the Testing Act.

ProLab transmitted the written result of the tests performed by Quest to Leisure Village. The results were labeled: "FOR MEDICAL TREATMENT ONLY…ANALYSIS WAS PERFORMED AS NON-FORENSIC TESTING." The ProLab laboratory manager, Amy Blackwell, affirmed that it was not the policy of ProLab to conduct or transmit collected urine specimens for forensic testing and that she had no knowledge that another ProLab employee had agreed to transmit the samples to Quest for testing. The sample collected from Plaintiff tested positive for illicit drugs.

It is undisputed that Leisure Village reported the results of Plaintiff's urinalysis to the Oklahoma Board of Nursing ("the Board") on July 17, 2007. On June 28, 2007, Plaintiff had already decided to resign her position at Leisure Village and go to work for another long-term nursing care facility named Ambassador Manor. Plaintiff did not return to Leisure Village following the submission of her urine sample. Plaintiff was not terminated from her position at Leisure Village, nor was she confronted by either Leisure Village or ProLab with the test results.

In September, 2007, Plaintiff received a notice from the Board summoning her to a meeting. At the meeting, the Board informed Plaintiff that her workplace drug test results indicated use of controlled substances. Plaintiff entered into a Stipulation, Settlement and Order with the Board on Sept. 11, 2007. Said Order allowed Plaintiff to retain her license if she complied with seven conditions and timely provided documentation of compliance. The Board advised Plaintiff that she was still permitted to practice as an LPN, but that she would have to meet a series of requirements in order to

complete her probation. The Board further notified Plaintiff that failure to meet the probationary requirements would result in revocation of her license. Plaintiff failed to complete five mandatory drug tests. Plaintiff failed to timely document attending ordered classes, and Plaintiff failed to submit verification as required. As a result, Plaintiff's license was temporarily suspended. Subsequently, the Board informed Plaintiff that her license had been revoked.

Plaintiff's LPN license was not revoked during the probationary period – she remained in a position to practice nursing and earn a living as such. Plaintiff was not publicly censured by the Board, nor did she suffer any loss of wages or benefits until she failed to comply with the terms of her probation.

Plaintiff filed the instant action in this Court on June 10, 2009. *See* Dkt. # 2. Quest, an original defendant in Plaintiff's complaint, was subsequently dismissed without prejudice. *See* Dkt. # 44. Leisure Village brought a separate tort and breach of contract action against ProLab to recover, *inter alia*, the amount of the judgment paid to Plaintiff. *See Leisure Village Operating, LLC d/b/a Leisure Village Health Care Center vs. Professional Clinical Laboratory, Inc*., Case No. 4:09-cv-654-GKF-FHM (N.D.Okla. 2009). ProLab moved to consolidate the two cases. *See* Dkt # 26. The cases were consolidated for discovery purposes at that time, but consolidation for trial purposes was reserved for later decision. *See* Dkt. # 36. ProLab filed a motion for summary judgment, to which Plaintiff responded. *See* Dkt. # 55, 57.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of

law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (9186); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Kendall v. Watkins*, 998 F.2d  848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedure shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'".  *Id*. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts… Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986)(citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*,  164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant ProLab moved for summary judgment as to Plaintiff's claims alleging that (A) the Testing Act does not confer a duty to employees on testing facilities, and (B) any such violation was not the direct, or proximate, cause of the injuries claimed by Plaintiff.

"A federal court sitting in diversity must apply the substantive law of the forum state…". *Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir.1997).

### A.

The Testing Act, 40 O.S. §§ 551-565, was enacted in 1993 to govern employers who test job applicants or employees for drugs or alcohol. *Estes v. ConocoPhillips Co.*, 2008 OK 21, 184 P.3d 518. "The purpose behind the Testing Act is to create standards for employer drug and alcohol testing so both employees and employers can be assured of due process." *Id.* (emphasis added).

The parties dispute the applicability of the civil liability provision of the Testing Act to a testing facility. Plaintiff asserts "Mike was owed a duty by Defendants to be tested in accordance with all applicable Oklahoma state laws including the Testing Act and the SBOH Rules." *See* Dkt. 2 at 4, ¶ 13. ProLab argues the provisions of the Testing Act impose a civil action remedy against employers, while testing facility violations are subject only to administrative fine.

The Testing Act clearly imposes a duty on *employers* to conform to the Testing Act for the sake of their employees. *See e.g.* 40 O.S.Supp. 2005 § 554 ("Employers who choose to conduct drug or alcohol testing may only request or require an applicant or employee to undergo testing under the following circumstances…"); *see also* 40 O.S.

2001 § 555(A)("No employer may request or require an applicant or employee to undergo drug or alcohol testing unless the employer has first adopted a written, detailed policy setting forth the specifics of its drug or alcohol testing program."; 40 O.S. 2001 § 556(B)("An employer shall pay all costs of testing for drugs or alcohol required by the employer…"); 40 O.S. 2001 § 560 (A)("Employers shall maintain all drug and alcohol test results and related information"); 40 O.S. 2001 § 561 ("Drug or alcohol testing governed by the Standards for Workplace Drug and Alcohol Testing Act shall not be requested or required of an employee by an employer unless the employer provides an employee assistance program."); 40 O.S. 2001 § 564 ("On and after the effective date of this act no employer shall implement a drug or alcohol testing program subject to the provisions of this act unless the program is in compliance with the provisions of this act and the rules promulgated pursuant thereto."  The Testing Act is devoid, however, of any specific reference to a duty owed *to employee* on the part of a *testing facility*.

Section 563(A) provides employees with a right to bring a civil action against employers who violate the provisions of the Testing Act:

> "Any person aggrieved by a willful violation of the Standards for Workplace Drug and Alcohol Testing Act may institute a civil action in a court of competent jurisdiction within two (2) years of the person's discovery of the alleged willful violation or of the exhaustion of any internal administrative remedies available to the person, or be barred from obtaining the relief provided for in subsection B of this section."

That the civil action remedy was intended to be wielded by employees against employers is implied by both the above reference to exhaustion of "internal administrative remedies" and nature of the damages provided for in Section 563(B).  Said damages are clearly of a kind an employee would seek from an employer, not a testing facility:

"A prevailing party may be awarded declaratory or injunctive relief and compensatory damages which may include, but not be limited to, **employment, reinstatement, promotion**, the payment of lost wages and other remuneration to which the person would have been entitled and **payment of and reinstatement to full benefits and seniority rights**. Reasonable costs and attorney fees may be awarded to the prevailing party."

Further, 40 O.S. 2001 § 560 (A)(emphasis added) provides that the drug test results and the incidental information shall remain confidential:

"Employers shall maintain all drug and alcohol test results and related information…as confidential records. Such records, including the records of the testing facility, shall not be used in any criminal proceeding, or any civil or administrative proceeding, except in those actions taken by the employer or in any **action involving the individual tested and the employer** or unless such records are ordered released pursuant to a valid court order."

The Testing Act enabled the Oklahoma State Board of Health (Board of Health) to promulgate rules for the licensure and regulation of testing facilities, and for the establishment of minimum testing standards and procedures. *Estes*, 2008 OK 21, ¶ 8. Pro-Lab acknowledged it is not licensed to perform forensic drug testing on Oklahoma employees. However, testing facilities that violate the provisions of the Testing Act are expressly subject only to *administrative fine*, not a civil action. 40 O.S. 2001 § 558(C).

"Any testing facility providing laboratory services to an employer to test for the evidence of drugs or alcohol which is not licensed by the State Department of Health pursuant to this section shall be subject to an administrative fine of not more than Five Hundred Dollars ($500.00) for each offense. Each test performed by the unlicensed testing facility in violation of this section shall constitute a separate offense."

*Id*. No Oklahoma Court has ever held that Section 563 provides a civil action for any party other than an employee, aggrieved by an employer's willful violation of the Testing Act. Consequently, this action is not authorized by the Testing Act, and ProLab is entitled to summary judgment.

**B.**

Even if the Court were to assume that Section 563 provides employees with a civil action remedy against testing facilities, ProLab remains entitled to summary judgment, as the undisputed material facts show that any violation of the Testing Act by ProLab was superseded by the intervening actions and omissions of both non-party Leisure Village and Plaintiff, causing Plaintiff's alleged damages.

In her Response, Plaintiff argues she need not show her alleged damages were proximately, or directly, caused by ProLab's alleged violation of the Testing Act and that, regardless, said violations were the proximate cause of her alleged injuries damages. *See* Dkt. # 57 at 21-26.

1.

Plaintiff concedes that "unquestionably the Testing Act's civil liability is only available…against those who have…caused injury to the plaintiff…". *See* Dkt. # 57 at 21. However, Plaintiff claims she need not show her injuries were *proximately* caused by Pro-Lab's alleged violations of the Testing Act because her cause of action arises under statute, rather than the common law. *Id*. Plaintiff argues she "need only show that she was aggrieved by Pro-Lab's willful violations of the Act…[t]he tort principle concept of proximate cause is not applicable." *Id*. [3]

The Testing Act provides that "[a]ny person aggrieved by a willful violation of the Standards for Workplace Drug and Alcohol Testing Act may institute a civil action in a court of competent jurisdiction…". 40 O.S. 2001 § 563. An Oklahoma appellate court has yet to address the issue of causation under the Testing Act. However, when

---

[3] This contention is a departure from her Complaint, wherein Plaintiff alleged "Defendant's illegal testing…**proximately caused** Mike damages…". *See* Dkt. # 2.

addressing causation requirements in other statutory torts, Oklahoma courts have required a showing of proximate cause.[4]

The statutory language of the Oklahoma Consumer Protection Act (OCPA),[5] for example, is similar to that of the Testing Act. "The commission of any act or practice declared to be a violation of the Consumer Protection Act shall render the violator liable to the **aggrieved** consumer for the payment of actual damages sustained **by** the customer…". *Id.* at § 761.1(A). In order to sustain a private action under the OCPA, a consumer must show "that the challenged practice caused the plaintiff's injury". *Patterson v. Beall*, 2000 OK 92, ¶ 30, 19 P.3d 839. In determining the required showing for damages to sustain an action for violation of the OCPA, the Court in *Walls v. American Tobacco, Co.*, 2000 OK 66, ¶ 9, 11 P.3d 626, turned to 23 O.S. 2001 § 61, which provides (emphasis added): "[f]or the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment **proximately caused thereby**, whether it could have been anticipated or not."

A second example may be found in *Turley v. Flag Redfern Oil Co.*, 1989 OK 144, ¶ 12, 782 P.2d 130, wherein the Court held an "aggrieved party", for purposes of appellate standing,

---

[4] The term "direct" is a synonym for "proximate" in Oklahoma Uniform Jury Instruction No. 9.6 (comments). "Direct cause means a cause which, in a natural and continuous sequence, produces injury and without which the injury would not have happened. For negligence to be a direct cause it is necessary that some injury to [the property of] a person in [Plaintiff's] situation must have been a reasonably foreseeable result of negligence. *Id.* (citing *Atherton v. Devine*, 1979 OK 132, ¶ 4, 602 P.2d 634, 636: "Foreseeability is an essential element of proximate cause in Oklahoma, and it is the standard by which proximate cause, as distinguished from the existence of a mere condition, is to be tested."

[5] *See* 15 O.S. §§ 751 – 764.1.

"is one whose pecuniary interest in the subject matter is **directly** and injuriously affected, or one whose right in property is either established or divested by the decision from which the appeal is prosecuted. To render a party aggrieved by the decision, its adverse effect must be **direct**, substantial, and immediate rather than contingent on some possible remote consequence or a mere possibility of an unknown future eventuality."

A third example may be found in the Oklahoma Workers' Compensation Act ("WCA"). Under the provisions of the WCA, an employer is statutorily prohibited from discharging an employee as a retaliatory measure for filing a claim under the WCA. *See* 85 O.S. 2001 § 5. An employee may bring a civil action against his employer for retaliatory discharge. *See* 85 O.S. 2001 § 6 ("…a person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages, actual and punitive if applicable, suffered by an employee **as a result of** the violation.").

In *Rogers v. Welltech, Inc.* 1991 OK CIV APP 21, ¶ 9, 813 P.2d 534, plaintiff brought a claim of retaliatory discharge against his employer pursuant to 85 O.S. §§ 5, 6. The district court's failure to define the statutory phrase "as a result of" or instruct the jury on how to determine whether damages suffered by Rogers legally "resulted from" the retaliatory discharge, was reversible error. "Although Rogers argues the "direct cause" instruction embodied in OUJI-CIV 9.6, the instruction requested by Welltech, applies only to negligence, he cites no authority that damages for this statutory tort, unlike other torts, are not limited to those "directly caused" by the act of the tortfeasor."[6] *Id*; s*ee also Morgan v. Galilean Health Enterprises, Inc*., 1998 OK 130, fn 6, 977 P.2d

---

[6] The court's concern in *Rogers* was compounded by evidence that the plaintiff's injuries may well have been caused by subsequent events beyond the purview of the statutory cause of action.

357 (district court instructed jury that cause of action alleging violation of the Nursing Home Care Act (NHCA), 63 O.S. 2001, § 1918(F), required proof that the alleged violation of the NHCA *directly caused* plaintiff's injury).

Here, Plaintiff has failed to cite any authority for her contention that she need not show the damages she allegedly suffered were the direct, or proximate, result of a violation of the Testing Act by Pro-Lab. Regardless, the above-cited authority shows clear precedent for application of the principle to statutory torts such as the Testing Act.

Therefore, Plaintiff must show her injuries were directly, or proximately caused by a willful violation of the Testing Act.

> "The sufficiency of the evidence to show causal connection between the acts of the defendant and the injury complained of presents a question of law for the court. The general rule is that the causal connection between an act of negligence and an injury is broken by the intervention of a new, independent and efficient cause which was neither anticipated nor reasonably foreseeable."

*Thompson v. Presbyterian Hosp., Inc.,* 1982 OK 87, ¶ 12, 652 P.2d 260.

A supervening cause is one that interrupts or breaks the connection between a defendant's act, or omission, and a plaintiff's injury. ProLab's alleged violations of the Testing Act would not be the direct cause of Plaintiff's alleged damages if another event intervened between the two and that event was: (1) independent of ProLab's act; (2) adequate by itself to cause Plaintiff's alleged damages; and (3) not reasonably foreseeable by ProLab. *Graham v. Keuchel*, 1993 OK 6, ¶ 14, 847 P.2d 342; *see also* Oklahoma Uniform Jury Instruction 9.8; *Thompson v. Presbyterian Hosp., Inc.*, 1982 OK 87, ¶ 14, 652 P.2d 260, 264-65 (negligence of anesthesiologist was supervening cause of patient's injuries); *Henry v. Merck & Co., Inc.*, 877 F.2d 1489, 1494-97 (10th Cir. 1989)(criminal

acts of stealing sulphuric acid and throwing it on the plaintiff were a supervening cause of plaintiff's injuries).

In the instant case, ProLab asserts Plaintiff's damages were caused by (i) Leisure Village's report of Plaintiff's clinical drug test results to the Board, which constituted willful disregard of the disclaimer plainly affixed to the results of Plaintiff's test results ("FOR MEDICAL TREATMENT ONLY…ANALYSIS WAS PERFORMED AS NON-FORENSIC TESTING."), violation of Leisure Village's own internal policy, and the confidentiality requirements of the Testing Act. *See* Dkt # 55, Fact 33; *see also* 40 O.S. 2001 § 560(A)("Employers shall maintain all drug and alcohol test results and related information…as confidential records."). ProLab asserts Plaintiff's alleged damages were further caused by (ii) Plaintiff's unforeseeable, independent failure to abide by the terms of probation, which resulted in the revocation of her license. *See* Dkt. # 55, Facts 34-42.

The following facts are undisputed. In September, 2007, Plaintiff received a notice from the Board summoning her to a meeting. At the meeting, the Board informed Plaintiff that her workplace drug test results indicated use of controlled substances, including marijuana and possibly cocaine. Plaintiff was informed that she would retain her license if she entered a "Peer Assistance Program". The Program called for attendance at peer meetings, mandatory urinalysis screenings, and counseling. The Board advised Plaintiff that she was still permitted to practice as an LPN, but that she would have to meet a series of requirements in order to complete her probation. The Board further notified Plaintiff that failure to meet the probationary requirements would result in revocation of her license. Plaintiff failed to complete five mandatory drug tests. Plaintiff failed to timely document attending ordered classes, and Plaintiff failed to submit

verification as required.  As a result, Plaintiff's license was temporarily suspended. Subsequently, the Board informed Plaintiff that her license had been revoked.  Plaintiff did not suffer any loss of wages or benefits, until she failed to comply with the terms of her probation, she was not publicly censured by the Board, and her LPN license was not revoked during the probationary period – she remained in a position to practice nursing and earn a living as such.  *See* Dkt. # 55, Facts 34 – 42.

Further, the results of the test forwarded to Leisure Village were clearly labeled: "FOR MEDICAL TREATMENT ONLY…ANALYSIS WAS PERFORMED AS NON-FORENSIC TESTING."  *See* Exhibit "P": Rpt. of Test Results.

> "`The general rule is that the causal connection between an act of negligence and injury is broken by the intervention of a new, independent and efficient cause, which was neither anticipated nor reasonably foreseeable. In such case the negligence of the original wrongdoer is not actionable because it is only the remote, rather than the proximate, cause of the injury.  Thus where a negligent act merely creates a condition making an injury possible, and a subsequent independent act causes the injury, the original act of negligence is not ordinarily the proximate cause thereof.

*Long v. Ponca City Hospital, Inc.*, 1979 OK 32, ¶ 10, 593 P.2d 1081 (quoting *Champlin Oil & Refining Co. v. Roever*, 477 P.2d 662, 665, 667 (Okl. 1970).

1. The conduct of Leisure Village and Plaintiff was adequate to cause injuries

The adequacy of Leisure Village's conduct – forwarding test results to the Board with knowledge of their non-forensic nature – and Plaintiff's conduct – failure to abide by the terms of her probation – cannot be measured by applying a simple "but for" analysis to ProLab's alleged violation of the Testing Act.  Plaintiff may not maintain the causal chain by arguing, for example, that "but for" ProLab's alleged violation of the Testing Act, Leisure Village would never have reported Plaintiff to the Board, and

Plaintiff would not have been placed on probation, putting her in a position to lose her license.

"A remote cause which merely furnishes the *occasion* for an injury which results from an intervening efficient cause cannot be the predicate for liability, *even though the injury would not have happened "but for" the earlier incident*." *Graham*, 1993 OK 6, ¶ 19. The Court's analysis in *Graham* requires an accounting of both the "nature of the risk and the character of the intervening cause. *Id*. at ¶ 20.

(i) Plaintiff would not have been placed on probation had Leisure Village not willfully and knowingly forwarded the results of a non-forensic test to the Board. Even where Leisure Village assumed the results *were* for forensic purposes, the Testing Act forbids the action taken by Leisure Village. Title 40 O.S. 2001 § 560 (A)(emphasis added) clearly provides the results of employee drug tests and incidental information shall remain confidential:

> "Employers shall maintain all drug and alcohol test results and related information…**as confidential records**, separate from other personnel records. Such records, including the records of the testing facility, shall not be used in any criminal proceeding, or any civil or administrative proceeding, except in those actions taken by the employer or in any action involving the individual tested and the employer or unless such records are ordered released pursuant to a valid court order."

Leisure Village was under no legal obligation to forward the results of Plaintiff's urinalysis to the Board. The obligation of Leisure Village, and other nursing facilities, to report nursing incidents to the Board is provided for by regulation. OAC § 310:675-7-5-1. There is no provision requiring a nursing facility to report the results of a workplace drug test to licensing boards. *Id*.

Leisure Village attempted to justify this indiscretion by citing the safety of their

residents. However, it is undisputed that Leisure Village was on notice, prior to the conduct of the workplace drug test, that Plaintiff was voluntarily terminating her employment with Leisure Village in favor of employment with Ambassador Manor. *See* Dkt. # 55, Fact 22. As a result, Leisure Village's conduct was a supervening cause following any alleged impropriety by Pro-Lab.

(ii) Plaintiff would not have lost her license as a nurse if she, herself, had not intervened to bring about the harmful result. At worst, ProLab may be said to have created a condition in bringing about the placement of Plaintiff on probation with the Board. However, Plaintiff suffered no injury as a result of her probationary status. First, Plaintiff did not suffer loss of wages or benefits, having testified that she planned to leave her job at Leisure Village and take another, regardless of the test herein complained of. Second, Plaintiff was not publicly censured by the Board. Third, her LPN license was not initially revoked during the probationary period – she remained in a position to practice nursing and earn a living as such.

2. Leisure Village's acts, as well those of Plaintiff, were an "independent force"

In *Graham*, 1993 OK 6 ¶ 18, the Court evaluated whether a plaintiff's acts were an "independent force" by reviewing plaintiff's control of the situation and determining whether or not the alleged tortfeasors could have prevented the eventual harm.

Here, (i) Leisure Village had full knowledge that the results were appropriate for medical use only. Leisure Village was clearly on notice that the lab results were not intended to support a charge of drug use against an employee. ProLab could not prevent Leisure Village's independent, intervening decision to forward the results to the Board.

Further, (ii) Plaintiff was in complete control of her probationary status. The

evidence shows Plaintiff had full knowledge of the risks of failing to abide by the terms of her probation. Plaintiff does not deny that she received correspondence from the Board of Nursing outlining the terms of her probation and the consequences of failing to comply. Regardless, Plaintiff acknowledged missing five separate urinalysis screenings required by the Board – one inadvertently, the others willfully, whereupon her license was suspended. Plaintiff further acknowledged missing classes and failing to submit verification of compliance with the terms of suspension, whereupon her license was revoked for a two-year period.

3. <u>ProLab could not *reasonably foresee* that (i) a licensed practical nurse, placed on probation by the State Nursing Board, would willfully fail to abide by the terms of her probation knowing her license would be revoked as a consequence, or (ii) Leisure Village's willful disregard of the disclaimer affixed to Mike's test results</u>

"A negligent actor is *not* bound to *anticipate* another's wrongful act *after the latter has discovered the danger* that arises from the former's negligence." *Graham*, 1993 OK 6, ¶ 13 (emphasis original).

(i) ProLab could not have reasonably foreseen that Leisure Village would willfully disregard the disclaimer, plainly affixed to the test results for Plaintiff ("FOR MEDICAL TREATMENT ONLY…ANALYSIS WAS PERFORMED AS NON-FORENSIC TESTING." and forward the results to the Board. *See* Exhibit "P": Rpt. of Test Results.

(ii) Further, ProLab could not reasonably foresee that, Plaintiff, would willfully fail to abide by the terms of her probation in the face of substantial risk of a known and appreciated danger that her license would be revoked.

Plaintiff alleges "Mike began to suffer damages as soon as the results of her test were sent to her employer." *See* Dkt. # 57 at 24. Plaintiff offers no evidence to support

this assertion, which is also contradicted by Plaintiff's own deposition testimony. *See* Dkt. # 55 at 7, Fact No 33.

The undisputed facts show that Plaintiff had yet to suffer any of the damages alleged in her Complaint until Leisure Village willfully disregarded the disclaimer attached to the results of the non-forensic drug test and mailed a notice[7] – without the relevant disclaimer – to the Oklahoma Board of Nursing (thereby violating the confidentiality requirements of the Testing Act).

It is undisputed that Plaintiff suffered no loss of wages or benefits immediately following the transmission of the results to Leisure Village. Plaintiff was not discharged by Leisure Village, having already decided to change employment. Indeed, Plaintiff never returned to Leisure Village following submission of her urine sample and collection of her final paycheck on the same date. Plaintiff did not suffer any loss of wages or benefits until after the notice of her test results was forwarded to the Oklahoma Board of Nursing and after she failed to satisfy the stipulated terms of her probation.

It is undisputed that Plaintiff was unaware of the results until she was contacted by the Oklahoma Board of Nursing and summoned to appear before that body. Plaintiff suffered no emotional distress, or any administrative costs associated with the disciplining of her license, until after the supervening act of Leisure Village.

Finally, Plaintiff argues that her personal and professional reputation was damaged upon transmission of her non-forensic test results to Leisure Village. *See* Dkt. #

---

[7] Contrast the results transmitted from Pro-Lab to Leisure Village, clearly containing the disclaimer, with the notice sent from Leisure Village to the Oklahoma Board of Nursing, offering no indication of the non-forensic nature of the test results. *See* Dkt # 55, Ex. "P": Rpt. of Test Results (July 13, 2007); Ex. "Q": Leisure Village's Rpt. to OK Nursing Bd. (July 17, 2007).

57, 24.  Plaintiff offers no evidence in support of this assertion, however.  It is undisputed that Plaintiff had no contact with Leisure Village after submitting a urine sample and collecting her final paycheck.  Plaintiff has offered no evidence that Leisure Village contacted her new employer and reported the results of the test, thereby damaging her reputation with her new employer.

## IV.

Further, ProLab moves for summary judgment in its favor as to Plaintiff's gross negligence claim because ProLab did not "intentionally fail to perform a manifest duty in reckless disregard of the consequences".  Regardless, ProLab's gross negligence was not the proximate cause of Plaintiff's alleged damages.

Plaintiff alleges gross negligence under the Oklahoma common law.  *See* Dkt. 2 at 4.  Three elements essential to a prima facie case of negligence[8] are: (a) a duty owed by the defendant to protect the plaintiff from injury, (b) a failure to properly exercise or perform that duty and (c) plaintiff's injuries proximately caused by the defendant's failure to exercise his duty of care.  *Thompson v. Presbyterian Hosp., Inc.,* 1982 OK 87, ¶ 7, 652 P.2d 260.

The common law of Oklahoma divides "actionable tortious conduct into (1) negligence, and (2) willful acts that result in intended or unintended harm."  *Parret v. UNICO Service Company,* 2005 OK 54127 P.3d 572 (citing *Graham v. Keuchel*, 1993 OK 6, 847 P.2d 342, 362).  In the lower tier of tortious conduct lie three levels of negligence. *Id.*  These are defined by statute in Oklahoma as slight negligence, ordinary

---

[8] A claim of gross negligence is the same as a negligence claim, differing only as to degree.  *NMP Corp. v. Parametric Technology Corp.*, 958 F.Supp. 1536, 1546 (N.D.Okla. 1997).

negligence, and gross negligence.  25 O.S. 2001 §§ 5 & 6.  Slight negligence consists in the want of great care and diligence; ordinary negligence in the want of ordinary care and diligence; and gross negligence is the want of slight care and diligence.  25 O.S. 2001 § 6.  Slight care or diligence is such as persons of ordinary prudence usually exercise about their own affairs of slight importance.  25 O.S. 2001 § 4.

Gross negligence requires the intentional failure to perform a manifest duty in reckless disregard of the consequences or in callous indifference to the life, liberty, or property of another.  *Palace Exploration Co. v. Petroleum Development Co.*, 374 F.3d 951 (10th Cir. 2004)(citing *Fox v. Oklahoma Memorial Hosp.*, 1989 OK 38, ¶ 5, 774 P.2d 459).

Plaintiff asserts "she was owed a duty by Defendants to be tested in accordance with all applicable Oklahoma state laws including the Testing Act and the SBOH Rules." *See* Dkt. # 2 at 4, ¶ 13.  Further, Plaintiff alleges "Defendants breached this duty when they subjected Mike to drug testing in reckless disregard of Mikes rights when Defendants were either aware, or showed deliberate disregard, that there was a substantial and unnecessary risk that their conduct would cause serious injury to her."  *Id*.

ProLab cannot be said to have "intentionally failed to perform a manifest duty in reckless disregard of the consequences or in callous indifference to the life, liberty, or property of another" for the same reasons ProLab cannot be said to have "willfully violated" the Testing Act.  Regardless, any gross negligence in adhering to the Testing Act was not the proximate cause of Plaintiff's injuries, having been supervened by Plaintiff's failure to maintain her license.

**V.**

**IT IS THEREFORE ORDERED** that Defendant Professional Clinical Laboratory, Inc.'s Motion for Summary Judgment (Dkt. # 55) is granted as to Plaintiff's claims for gross negligence and violation of the Oklahoma Standards for Workplace Drug and Alcohol Testing Act ("Testing Act"), 40 O.S. § 551, *et seq*.

James H. Payne
United States District Judge
Northern District of Oklahoma